VILIAMU CHAN KAU, Plaintiff

v.

SIATIU SAMASONI and TALAMEU SAMASONI, Defendants

High Court of American Samoa
Trial Division

CA No. 91-87

January 27, 1988

Before KRUSE, Associate Justice, AFUOLA, Associate Judge, and OLO, Associate Judge.

Counsel: For Plaintiff, Asaua Fuimaono
For Defendants, Togiola T.A. Tulafono

Plaintiff, Viliamu Chan Kau, offered to sell his aiga bus[1] to his friend, the defendant Siatiu Samasoni. At the time the offer was made, sometime in February, 1986, the bus had been garaged for repairs. At plaintiff's further insistence, defendant withdrew $600.00 from his savings bank account and handed the same to plaintiff, who defendant says was in need of cash at the time. As far as we can gather, the understanding between the

---

[1] 1980 Ford CP-622.

parties at this point in time was that defendant would take possession of the bus when the same left the garage. About a week later, defendant, at plaintiff's further request for money, gave plaintiff $2,000.00. And yet another week afterwards, defendant gave plaintiff another $150.00. Defendant by now had advanced plaintiff $2,750.00 while the bus was still being repaired. The overall price of the bus was to be $8,500.00 and we find that the parties' intention was that the balance (less the deposit) would be paid off in installments while defendant operated the bus.

Plaintiff took delivery of the bus after repairs were completed and when defendant noticed the bus parked by the plaintiff's home, he went to see the plaintiff. In the ensuing conversation, plaintiff advised defendant that a certain church organization had offered to purchase the bus with payment to be made in full. Plaintiff proposed to defendant to allow the bus to be sold to the church, and from the proceeds thereof, the defendant's money would be refunded.

The next that defendant knew of the bus was that the same was garaged again for further repairs. It was shortly returned to plaintiff, whereupon defendant consulted plaintiff for the expected return of his money. Plaintiff did not have defendant's money, whereupon the latter took the bus with plaintiff's acquiescence.

Defendant's theory at this point in time was that he was taking possession of the bus as security for the return of his money. It was his understanding that the church deal had fallen through.

Plaintiff on the other hand states that he had given defendant the option of maintaining their previous agreement of defendant purchasing the bus - and thereby taking possession immediately - or that defendant could wait until the sale to the church had come through and then defendant's money could be refunded.

Defendant's taking possession of the vehicle entailed his operating the bus for carriage. Some two weeks later, defendant persuaded plaintiff to sign over the ownership papers. Plaintiff said he was reluctant to do this because of the outstanding purchase money, but was persuaded by defendant who

22

insisted in having the bus in his name for insurance purposes and thereby eliminating plaintiff's exposure to liability.

While the bus was being operated by defendant, all that plaintiff subsequently received was $390.00. Plaintiff files suit.

Among defendants' counterclaims is that the bus was continuously breaking down and in his calculation of receipts against expenses while the bus was operable, the bus had netted only $1,020.00 for the some 36 weeks he ran the bus. The bus while still in his possession, now needs repairs. The radiator had fallen off its rusted mounting shortly before Christmas, and since that time, the bus has been parked.

The Court is asked to adjust rights and obligations accordingly between the parties who have both attempted to advance various contractual theories in the case. In order to accommodate these theories, the Court would be required to undertake some rather fanciful and imaginative findings of common intents to reconstruct a resulting agreement. To the contrary we find as follows:

## CONCLUSIONS

(1) The bus belongs to plaintiff. Plaintiff received from defendant the total sum of $3,140.00 anticipating the conclusion of a sale.

(2) A sale did not go through as anticipated. With intervening factors neither party had any definite commitments or intents regarding the sale arrangement originally anticipated.

(3) Defendant's removal of plaintiff's bus was with the intention to recoup his losses, not to undertake to purchase the bus; it was also with the plaintiff's acquiescence as well as his appreciation that he owed defendant money.

(4) Defendant worked plaintiff's bus and derived revenue therefrom for some 36 weeks.

(5) Defendant's use of the bus, as we gather from regular gasoline receipts admitted into evidence as well as the fare schedule from Fagatogo

to Tula, was more than adequate to offset plaintiff's monetary indebtedness.

(6) Plaintiff's demands for the return of his bus negatives past acquiescence and any further attempts by defendant to retain possession of the bus would be tantamount to conversion.

On the foregoing findings, judgment will enter accordingly and it is So ORDERED.